694 P.2d 1236

**Alonso TIRADO and Alejandro Rangel, Plaintiffs-Appellees,**

v.

**ARIZONA AGRICULTURAL EMPLOYMENT RELATIONS BOARD, an agency of the State of Arizona, and its members, John Blake, Sam Ramirez, John LaSota, Culver Nelson, Steve Moratori and Gary Pasquinelli; and United Farm Workers of America, AFL–CIO, Real Party in Interest; Campesinos Independientes, Real Party in Interest; the Woods Company, a corporation, Real Party in Interest, Defendants-Appellants.**

**No. 1 CA–CIV 6829.**

Court of Appeals of Arizona, Division 1, Department B.

Jan. 22, 1985.

Westover, Choules, Shadle, Bowen & Clark, P.C. by Allen J. Clark, Yuma, for plaintiffs-appellees.

Tom C. Cole, Yuma, for defendant-appellant The Woods Co.

Lyons, Alcala, Chavez, Eggers, Garcia & Gottlieb by Ira L. Gottlieb, Keene, Cal., and Treon, Warnicke & Roush, P.A. by Stanley Lubin, Linda Williamson, Phoenix, for defendant-appellant United Farm Workers of America, AFL–CIO.

William Gibney, Loretta Jacobs-Schwartz, Phoenix, for defendant-appellant Arizona Agricultural Employment Relations Board.

## OPINION

KLEINSCHMIDT, Judge.

■ The question here is whether an election to decertify a union as the bargaining agent for certain farm workers was valid. The issue turns upon whether a decertification election was held before the union had a fair chance to bargain on behalf of its members. It involves a construction of the Agricultural Employment Relations Act, §§ 23–1381, *et seq.* We find that the election to decertify the union was valid for two reasons: 1) the union failed to insist on timely certification of the election at which it was originally selected to represent the workers, and 2) the union did not oppose a court order staying the employer's duty to bargain with the union pending a challenge to the original election.

The procedural history of the case is complex. The points of law bearing on the case overlap and intertwine. In October of 1979, the United Farm Workers of America (UFW) filed a petition with the Arizona Agricultural Employment Relations Board (board) requesting a representation election to determine the entity that would bargain with the Woods Company on behalf of its employees. In November, the board conducted the election and the UFW won the right to bargain. The Woods Company filed an appeal to the board in January of 1980, claiming that some of the temporary workers who voted were ineligible. The board eventually ruled that despite the improper inclusion of certain workers, the union had won a majority of the ballots. While the Woods Company raised other challenges to the election, the board certified the election in December of 1980, over a year after it had taken place.

A week after the board certified the election, the UFW sent a letter to the Woods

Company demanding that the company bargain. The company refused, claiming that it would seek judicial review of the representation election. In January of 1981, confronted with this resistence, the UFW filed an unfair labor practice complaint with the board charging the Woods Company with having refused to bargain in violation of A.R.S. § 23–1385(A)(5). The board declined to issue an unfair labor practices complaint.

The Woods Company did file a complaint for judicial review of the election with the superior court in February, 1981, and simultaneously requested the court to stay the company's duty to bargain with the UFW pending a decision on the merits. The UFW moved to dismiss the complaint for lack of jurisdiction and it is uncontested that the union never objected to the requested stay. The superior court denied the motion to dismiss, stayed the company's duty to bargain and ultimately decided the merits in favor of the union. Finally, in October of 1983, the Arizona Court of Appeals, Division I, upheld the validity of the election. *The Woods Company v. Arizona Agricultural Employment Relations Board & United Farm Workers of America, AFL–CIO*, 1 CA–CIV 6585 (Ariz. App. Oct. 11, 1983).

While the foregoing appeal was pending, in January of 1982, certain employees of the company apparently became disenchanted with the union's perceived inability to achieve results. They filed a petition for an election to decertify the UFW as the bargaining representative. Later that month, the board's hearing officer decided that there was no legal impediment to such a decertification election. An election was held and the workers voted unanimously to decertify the UFW.

The UFW appealed to the board from the hearing officer's decision sanctioning a decertification election. The board reversed the hearing officer's decision. It found that the twelve month election bar created by A.R.S. § 23–1389(G) had not yet begun to run as to the original union certification election. The election bar precludes a de-

certification election if "in the preceding twelve-month period, a valid election shall have been held." *See* A.R.S. § 23–1389(G). Because of the uncertainty generated by the employer's appeal of the original representation election, the board reasoned that the union had not had sufficient opportunity to bargain and that decertification would therefore be unfair. The board believed it should construe the state statute in a manner consistent with federal law, which recognizes the rationale the board applied.

The employees seeking decertification next brought an action in the superior court seeking to overturn the board's ruling invalidating the decertification election. The court decided that the board had abused its discretion in failing to honor the decertification election. The court set aside the board's decision and directed a validation of the results of the February decertification election.

The thrust of the UFW's argument is that the board was right in invalidating the decertification election because it never had a fair chance to represent the employees who had elected it as their bargaining representative. That this is true, it says, was due to the board's delay of over a year in certifying the election and the court's order staying the Woods Company's duty to bargain. The appellees counter this by arguing that the UFW never insisted that the board certify the election within ten days, as it had a right to do, and that it never contested the stay of the Woods Company's duty to bargain. We find that the appellee's arguments are correct.

## CERTIFICATION WITHIN TEN DAYS IS MANDATORY

█ Our initial inquiry is whether the provisions of A.R.S. § 23–1387(C) make it mandatory that the board certify a representation election within ten days. Subsection (C) provides in relevant part:

The board may also establish offices in such other cities as it shall deem necessary and shall determine the region to be served by such offices. The board may delegate to the heads of these offices as

it deems appropriate its powers under § 23–1389, to determine the unit appropriate for the purpose of collective bargaining, to investigate and provide for hearings, *to determine whether a question of representation exists and to direct an election by a secret ballot and certify the results of such election within ten days.* (emphasis added).

The parties urge conflicting interpretations of the emphasized passage: The UFW claims that the language gives rise to a mere permissive duty to certify an election within ten days, while the employer contends that certification *must* occur within that time. We disagree with the UFW's view that the powers listed in subsection (C) are simply a litany of the enumerated powers which the board can delegate to the head of its regional office. We presume that the Arizona legislature intended the phrase "within ten days" to operate fully in accordance with its plain meaning. *Anderson v. Southwest Savings & Loan Ass'n,* 117 Ariz. 246, 571 P.2d 1042 (App.1977). The language of the statute is a command.

The distinction between the Arizona statute and the National Labor Relations Act (NLRA) on this point is instructive. The analog of A.R.S. § 23–1387(C) is found in 29 U.S.C. § 153(b), which reads:

The Board is authorized to delegate to any group of three or more members any or all of the power which it may itself exercise. The board is also authorized to delegate to its regional directors its powers under Section 159 of this title to determine the unit appropriate for the purpose of collective bargaining, to investigate and provide for hearings, and determine whether a question of representation exists, and to direct an election or take a secret ballot under subsection (c) or (e) of Section 159 of this title and *certify the results thereof,* except that upon the filing of a request therefor with the Board by any interested person, the Board may review any action of a regional director delegated to him under this paragraph, but such a review shall not,

unless specifically ordered by the Board, operate as a stay of any action taken by the regional director. (emphasis supplied).

The words "within ten days" that appear in A.R.S. § 23–1387(C) are missing from the federal statute. The need for quick resolution of the representation issue where migratory agricultural employees are concerned is the key to the difference between the statutes. Farm workers are not protected by the federal statute. The Arizona statute remedies a concern long held by the UFW about the NLRA:

[UFW's] principal complaint about the statutory election procedures is that they entail inescapable delays and so preclude conducting an election promptly enough to permit participation by many farm workers engaged in the production of crops having short seasons.

*Babbitt v. United Farm Workers National Union,* 442 U.S. 289, 299, 99 S.Ct. 2301, 2309, 60 L.Ed.2d 895 (1979). The implementation of a ten day certification scheme assures union farm workers that they will be able, with dispatch, "to invoke the statutory provision requiring an employer to bargain collectively with the certified representative of his employees." *Babbitt,* 442 U.S. at 312–313, 99 S.Ct. at 2316, 60 L.Ed.2d 895.

The thirteen month delay between the representation election and actual certification simply does not comport with the goals of our statute. There is nothing in the record which suggests why the union made no demand for certification during that period. The failure to make such a demand cannot be held against the appellees.

### THE ELECTION BAR

We proceed to the question of whether the one year election bar provided for in A.R.S. § 23–1389(G) should have any effect on the decertification election held in February of 1982. To assure that a successful union has an adequate period during which it can bargain before an attempt can be made to decertify it, the legislature created a one year election bar: "No election shall

be directed or conducted in any bargaining unit or any subdivision thereof within which, in the preceding twelve-month period, a valid election shall have been held." A.R.S. § 23–1389(G). The decertification election occurred in February of 1982. The initial representation election transpired more than two years earlier, in November of 1979. On its face, then, the twenty-five month period takes this case out of the election bar created by A.R.S. § 23–1389(G).

As appellants point out, however, much of the delay was caused by the Woods Company's tactics. The appellants would have us create a "certification bar" that, according to them, would guarantee a duly elected union the opportunity to establish a bargaining relationship with the employer. The idea of a certification bar springs from federal case law which held that the creation of such a bar was within the discretion of the National Labor Relation Board to facilitate the implementation of congressional policy. *See Brooks v. NLRB,* 348 U.S. 96, 75 S.Ct. 176, 99 L.Ed. 125 (1954). In contrast to the election bar, which runs from the time of the representation election, a "certification bar" would give the union a period of time after certification in which it could negotiate free of threats of decertification. The certification bar, appellants contend, would eliminate the possibility that an intransigent employer could delay certification by litigation without ever having bargained with the elected union. Under a certification bar, such delays would be counterproductive since the employer would be obligated after certification to bargain before decertification would be possible. We point out at the outset that a final certification bar of one year would not carry the day for the union in this case because the decertification election was held more than a year after certification was granted. We will nonetheless determine if such a concept fits within our statutory scheme.

The rationale for the NLRA certification bar is the very reason why it does not extend to situations governed by the Arizona statute. Explaining the underpinnings of the certification bar, one commentator has declared that the bar "extends somewhat the opportunity for a victorious union to consolidate its collective bargaining position in those instances in which there is a period of time ... between the date of election and the date of certification." Robert Gorman, *Basic Text on Labor Law, Unionization and Collective Bargaining* 53 (1976). But, the Arizona statute requires that certification occur within ten days of a representation election. Given this mandate for expeditious certification, the election bar created by the state statute serves roughly the same purpose as the NLRA certification bar.

Once an employer demonstrates intransigence about bargaining with a certified union, the union can file an unfair labor practice complaint with the board. In the instant case, the union did file an unfair labor practice complaint with the board in January of 1981. The board declined to accept jurisdiction and the union failed in its bid to have the courts consider that refusal on the merits.

■ We are alert to the union's complaint that an employer who chooses to contest an election and fight the issue through the courts can completely frustrate the purpose of the act. That does not have to be the case. First, as we have already observed, certification must follow closely upon the election. If the union is certified, the employer must bargain unless a stay is granted. Given the aura of legitimacy that accompanies certification, we doubt that such a stay could often or easily be obtained. If it is obtained, and if the union ultimately prevails in the litigation, the union's argument for a bar, like the election bar or certification bar, which would begin to run only after all litigation had ended in the union's favor, would be a stronger one. That is a question for another day.

It has occurred to us that since the Woods Company sought the stay, it is unfair that it benefit from the stay when it, the company, was found to be wrong about

the validity of the original election. But the adoption of that view would penalize the workers and could leave them in limbo for years without effective representation. Once a representation election is held, the workers should have some means of getting reasonably swift action from the union and the employer. If our statute is enforced as we have construed it, the process will be accelerated.

In summary, the ten day certification requirement of A.R.S. § 23–1387(C) is mandatory. Any decertification election conducted pursuant to the Arizona statute is subject to the one year election bar provided for in A.R.S. § 23–1389(G). Absent a stay, the employer must begin to bargain in good faith with the union upon certification, regardless of the legal avenues that the employer chooses to pursue. When confronted with an obstinate employer a union can ask the board to issue an unfair labor practice complaint. If a stay issues pending legal action brought by the employer, a victorious union can ask the court to impose a bar so that it can bargain on behalf of those it represents. As we have noted, whether or not such a bar ought to be judicially created must await another case.

Based upon the foregoing, we affirm the trial court's finding that the Arizona Agricultural Employment Relations Board acted arbitrarily and capriciously in setting aside the valid decertification election conducted in February, 1982.

GREER and FROEB, JJ., concur.